| | |
|---|---|
| 1    GEORGE A. ZELCS (*pro hac vice*) | PEGGY J. WEDGWORTH (*pro hac vice*) |

GEORGE A. ZELCS (*pro hac vice*)
gzelcs@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

KARMA M. GIULIANELLI (SBN 184175)
karma.giulianelli@bartlitbeck.com
GLEN E. SUMMERS (SBN 176402)
glen.summers@bartlitbeck.com
JAMESON R. JONES (*pro hac vice pending*)
Jameson.jones@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewetta St. Suite 1200,
Denver, Colorado 80202
Telephone: (303) 592-3100
Facsimile:  (303) 592-3140

*Counsel for Plaintiffs and the Proposed Class in Carr v. Google LLC, et al.*

STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Counsel for Plaintiffs and the Proposed Class in Pure Sweat Basketball, Inc. v. Google LLC, et al.*

BONNY E. SWEENEY (SBN 176174)
bsweeney@hausfeld.com
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980

*Counsel for Plaintiffs and the Proposed Class in Peekya App Services, Inc. v. Google LLC, et al.*

[Additional counsel appear on signature page]

PEGGY J. WEDGWORTH (*pro hac vice*)
pwedgworth@milberg.com
**MILBERG PHILLIPS GROSSMAN LLP**
One Penn Plaza, Suite 1920
New York, New York 10119
Telephone: 212-594-5300
Facsimile: 212-868-1229

*Counsel for Plaintiffs and the Proposed Class in Bentley v. Google LLC, et al.*

PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

CHRISTINE A. VARNEY (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff Epic Games, Inc. in Epic Games, Inc. v. Google LLC, et al.*

BRIAN C. ROCCA (221576)
brian.rocca@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Counsel for Defendants Google LLC, Google Ireland Limited, Google Commerce Ltd., Google Asia Pacific Pte. Ltd. and Google Payment Corp.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIC GAMES, INC., *Plaintiff,* v. GOOGLE LLC et al., *Defendants.* | Case No. 3:20-cv-05671-JD |
| BENTLEY, et al., *Plaintiffs,* v. GOOGLE LLC et al., *Defendants.* | Case No. 4:20-cv-07079-DMR |
| MARY CARR, et al., *Plaintiffs,* v. GOOGLE LLC et al., *Defendants.* | Case No. 3:20-cv-05761-JD |
| PURE SWEAT BASKETBALL, INC., et. al, *Plaintiffs,* v. GOOGLE LLC et al., *Defendants.* | Case No. 3:20-cv-05792-JD |
| PEEKYA APP SERVICES, INC., et. al, *Plaintiffs,* v. GOOGLE LLC et al., *Defendants.* | Case No. 3:20-cv-06772-JD **JOINT STATEMENT REGARDING PROTECTIVE ORDER** Judge: Hon. James Donato |

**Joint Statement:** The Parties worked hard and in good faith to reach agreement on a Protective Order. The Parties were able to reach agreement on every aspect of the Protective Order, except for one section. Below the Parties set forth their respective positions on that one section. For the Court's convenience, the Parties have attached two "final" versions of the proposed Protective Order—one that *includes* the disputed provision (Google's Position, Exhibit A), and one that *excludes* it (Plaintiffs' Position, Exhibit B). Other than the one provision, the attached Protective Orders are identical. The Parties request that the Court enter one of the two versions, and note their respective positions below.

**Google's Position:** Google appreciates the Court's guidance on a narrow but important Protective Order issue. Google respectfully requests that the Court adopt Exhibit A and apply a standard provision—namely, model section 7.4—from the Northern District of California's "Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets" ("Model Order").

The Parties dispute whether model provision, section 7.4, should be included. Google believes the model provision should remain in the Protective Order, and understands the Court directed that the Parties should "follow the forms approved by the Northern District of California, unless all parties agree to modifications as appropriate for these cases." *Epic* Docket (3:20-cv-05671-JD), ECF 66. With respect to section 7.4, the Parties could not agree on modifications, so Google believes the model provision should be adopted, consistent with the Court's directive. Plaintiffs, however, seek to remove the provision from the Model Order.

Section 7.4 of Google's proposed Protective Order is taken directly from the Model Order, which is the only model order that contains provisions for the designation of Highly Confidential—Attorneys' Eyes Only ("Highly Confidential—AEO") material.[1] The Parties, by adopting a two-tier designation process, including Highly Confidential—AEO, agree that this case

---

[1] The only change to Section 7.4 from the Model Order is to take out the provisions relating to and language referencing Designated House Counsel as provisions relating to Designated House Counsel have been incorporated into Section 7.3 and have been agreed upon by the Parties.

may involve highly sensitive confidential information. The "Standard Litigation" Model, which Plaintiffs reference below, does not include a provision like Section 7.4 because it does not contemplate a Highly Confidential—AEO designation, which is the only type of protected material at issue in Section 7.4. Google, unlike Plaintiffs, is not asking for special treatment. Courts in this District routinely enter this Model Order, including Section 7.4. And there is no basis for Plaintiffs' speculation about why Google should be denied the basic protections afforded to litigants in this District.

The proposed Protective Order that was otherwise agreed to by the Parties largely follows the Model Order and allows the Parties to mark documents as Confidential. Subject to other standard requirements of the Protective Order, the Parties are free to discuss Confidential information with their consultants and experts without triggering the disclosure requirement in Section 7.4. The Model Order also permits the Parties to mark documents as Highly Confidential—AEO. As the Model Order contemplates, before a Receiving Party shares Highly Confidential—AEO materials with experts or consultants, the Receiving Party should identify those individuals and provide an opportunity for the Designating Party to object to the disclosure of the material. This is a presumptively reasonable provision to protect highly confidential information. *See In re Google Assistant Privacy Litig.*, 2020 U.S. Dist. LEXIS 154957, *4 (N.D. Cal. Aug. 13, 2020) (rejecting plaintiffs' objection to section 7.4 "to the extent it requires the disclosure of the identify of retained experts, both testifying and non-testifying" and finding "in concurrence with innumerable decisions in this District, that section 7.4 is ***inherently reasonable***") (emphasis added); *see also Kelora Sys., LLC v. Target Corp.,* No. 10-cv-04947 CW LB, 2011 WL 6000759, at *2 (N.D. Cal. Aug. 29, 2011) ("[T]he model protective order . . . set[s] forth ***presumptively reasonable*** conditions regarding the treatment of highly confidential information.") (emphasis added).

With regard to disclosure of consulting experts, "[u]nderpinning the [Model Order] is the logic…[a] party should have an opportunity to vet someone who is going to have access to their 'extremely sensitive' confidential information, the disclosure of which creates a substantial risk of harm." *In re Google Assistant Privacy Litig.*, 2020 U.S. Dist. LEXIS 154957, *6 (N.D. Cal. Aug.

1    13, 2020).  Plaintiffs may prefer to keep their consultants hidden, but a "party should not have to
2    rely on an opponent's expert's self-evaluation of conflicts" when facing the substantial risk of
3    harm from disclosure.  *Id*.
4            Google believes this Model Order provision is necessary for these cases, where
5    competitively sensitive material and financial data will be produced from parties and non-parties.
6    The complaints purport to implicate "many thousands" of app developers (*PSB* (3:20-cv-05792),
7    ECF 56 at ¶ 179) and "tens of millions" of U.S. consumers (*Carr* (3:20-cv-05761-JD), ECF 55 at ¶
8    130).  Plaintiffs make claims that involve Android user's app downloads and other app developer
9    business transactions; commercial agreements with third parties; payment and billing issues,
10   pricing issues; competition in various purported markets; among many other highly sensitive
11   topics.  *In re Google Assistant Privacy Litigation*, a case that Google provided to class counsel
12   during the meet and confer process, is on point. There, the court, over plaintiffs' objections,
13   ordered the inclusion of Section 7.4 in the protective order after "agree[ing]" with Google's
14   "concern of potential substantial harm" of disclosure of Highly Confidential--AEO documents,
15   including "highly sensitive technical and financial documents." 2020 U.S. Dist. LEXIS 154957,
16   *7 (citing Dkt. 94 at 4); *In re Google Assistant Privacy Litigation* Dkt. 94 at 4 (describing "highly
17   sensitive technical and financial documents" requested by plaintiffs). Plaintiffs here are incorrect
18   to suggest the court was concerned with "highly confidential, personal information improperly
19   recorded from thousands of individuals."  Rather, plaintiffs in that case had requested
20   competitively sensitive documents "regarding (1) how the Assistant technology works (RFP Nos.
21   6, 8, 9, 11), (2) Google's own analytics regarding its speech recognition software (RFP Nos. 3,
22   21), (3) how Google stores user data, including how it is encrypted (RFP No. 12), (4) the types of
23   servers used by Google (RFP No. 32), and (3) revenue and sales data (RFP No. 24-26)." *In re
24   Google Assistant Privacy Litigation* Dkt. 94 at 4.
25           Although Section 2.7 of the Protective Order ensures that experts and consultants are not
26   an employee of a Party or a Party's competitor—or is not anticipated to become an employee of a
27   Party or of a Party's competitor—that provision is insufficient to protect legitimate
28   interests.  Experts or consulting firms often work for Google's competitors as well. Google should

1  be able to ensure that an expert or consultant (or the firm they work for) is not in a position to
2  learn about Google's (or non-parties') Highly Confidential—AEO materials and use that
3  knowledge to Google's (or non-parties') detriment in a different context. It is "commonplace" in
4  civil litigation to disclose the identity of experts and consultants "so that the trade secrets and
5  other sensitive information will not fall into the hands of someone with an adverse position to the
6  owner of the sensitive information." *Ibrahim v. Dep't of Homeland Sec.,* 669 F.3d 983, 999 (9th
7  Cir. 2012). Without such protections, the risk that highly sensitive information will be misused "is
8  simply too great." *Id.*; *see also WeRide Corp. v. Huang*, 379 F. Supp. 3d 834, 853 (N.D. Cal.
9  2019) ("A trade secret once lost is . . . lost forever."). This is the very harm that Section 7.4 was
10 designed to avoid. *Gradillas Court Reporters, Inc. v. Cherry Bekaert, LLP*, No. 18-mc-80064-
11 KAW, 2018 WL 2197544, at *7 (N.D. Cal. May 14, 2018) (rejecting the plaintiff's modifications
12 to Section 7.4 in a breach of contract case because they "cut[] out" the "producing party's ability
13 to approve or object to the disclosure of highly confidential information to an expert").

14       Consistent with the Model Order, Google only requests the opportunity to reasonably
15 object, if appropriate, to the disclosure of its Highly Confidential—AEO material to the disclosed
16 expert/consultants, or to meet and confer in order to request reasonable and targeted measures to
17 ensure its material is protected. If Google only learns later in the litigation that its Highly
18 Confidential—AEO material had been shared with an expert or consultant (i.e., during expert
19 disclosures), it will be too late to "unring the bell."  Google therefore seeks disclosure to ensure
20 highly confidential information is truly protected and not used improperly, as contemplated by the
21 Model Order. Google is willing to live with those same obligations.  In short, the opportunity to
22 object to an expert is only meaningful if that opportunity is provided before the expert is given
23 access to Highly Confidential—AEO materials.

24       Moreover, it is common for non-parties to ask who will have access to any Protected
25 Materials that they produce.  The Parties will not be able to answer that question absent the
26 process provided for in the Model Order, which may adversely impact the Parties' ability to obtain
27 non-party discovery.  A non-party with highly sensitive information will have no way of knowing
28 who will have access to that information, or which unidentified "consultants" or industry interests

will be self-evaluating potential conflicts in the shadows, inevitably leading to discovery disputes that could have been avoided with the adoption of the Model Order.

Finally, Plaintiffs' counsel makes reference to the Protective Order from the *Apple* actions pending since 2011 before a different Court in this District, which does not include section 7.4. There is no indication that any party requested the inclusion of that provision, and other parties' litigation decisions from years ago should have no bearing on whether this Court requires section 7.4 from the Model Order here.

**Plaintiffs' Position:** The disputed provision is an overreach by Google and does not belong in the Stipulated Proposed Protective Order for multiple reasons.

*First*, this provision does not appear in the Northern District of California Court's Stipulated Protective Order for Standard Litigation ("Standard Protective Order"). Rather, Google's proposed language is imported from the Court's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Patent Protective Order"), which appears under the heading "Patent Cases" on the Court's website.[2] This is clearly not a patent case. Nor is it a case involving trade secrets. Google argues this matter involves "highly sensitive confidential information". But all kinds of cases, including but not limited to antitrust, employment, restrictive covenant, breach of contract and products liability actions, frequently involve highly confidential information and the disclosure of that information to parties within the same field. Certainly antitrust cases by definition involve discovery into some competitively sensitive information. Yet antitrust cases were not, as a default matter, lumped together with patent and trade secrets cases for purposes of the model protective order, recognizing that the mere existence of financial, commercial and other information that one party characterizes as "highly confidential"—without more—does not and should not automatically trigger the Patent Protective Order's more restrictive provisions.

To the extent Google relies on *In re Google Assistant Privacy Litigation,* 2020 WL 4698810 (N.D. Cal. 8/13/2020), as support for inclusion of Paragraph 7.4, such reliance is

---

[2] *See* https://cand.uscourts.gov/forms/model-protective-orders/.

misplaced.  Google presented this case for the first time to Plaintiffs approximately ten minutes before a scheduled meet and confer on October 23, 2020.  But regardless of when it was disclosed, it has no bearing here.  That case charged Google "with unlawfully intercepting, recording, disclosing, and using the private conversations of thousands of users of the Google Assistant software." *In re Google Assistant Privacy Litigation*, 457 F.Supp.3d 797, 809 (N.D. Cal. 2020).  At issue, therefore, were two categories of information: (1) detailed technical information regarding how Google Assistant software works, including how it was triggered, what it recorded and how those recordings were used by Google to optimize advertising and voice recognition, and (2) highly confidential, personal information improperly recorded from thousands of individuals.[3] *Id.* at 810.  That case, therefore, involved both disclosure of Google's intellectual property regarding the creation and operation of Google Assistant, as well as incredibly personal information recorded from private citizens.

Here, in contrast, the information being disclosed does not contain highly sensitive information about individuals.  Rather, the information produced in this case will be the kind of information routinely obtained in *any* antitrust case, including, as in any high-stakes business dispute, financial and commercial information from the parties.  Yet, provisions like those in the Patent Protective Order are not routinely applied in antitrust cases.  There is a reason for that: the Standard Protective Order provides more than ample protection for highly confidential business and other information already (and if it does not, parties often add a layer of "attorneys' eyes only" documents, which Plaintiffs here have agreed to do).  Notably, in the *Epic Games, Inc. v. Apple, Inc.* action—pending in this district and involving precisely the same type of confidential information at issue here—the disputed provision was *not* included in the Stipulated Protective Order proposed by the parties and recently adopted by Judge Gonzalez Rogers. See *Epic Games,*

---

[3] In fact, plaintiffs in that case had already propounded document requests that called for "highly sensitive technical" documents regarding how Google's technology worked and the related analytics at the time the dispute arose over the protective order. *In re Google Assistant Privacy Litigation*, Case 5:19-cv-04286-BLF (N.D. Cal.), ECF No. 94, at 4 and Exhibit 2 (Discovery Letter Brief regarding Section 7.4 of Parties' draft protective order).

*Inc. v. Apple, Inc.*, 4:20-CV-05640 YGR (N.D. Cal.) at Dkt. Entry 112, Stipulation Between Epic Games, Inc. and Apple, Inc. and Protective Order (October 2, 2020).

The District Court's decision not to include the more restrictive provision in its Standard Protective Order indicates it should only be applied in the most specialized circumstances. Those circumstances are not present here, and Google has made no showing of why its disclosures require the Patent Protective Order's level of protection or what it intends to disclose that would not already be sufficiently protected by the protections offered in the Standard Order, as modified in Exhibit B.

*Second*, the Standard Protective Order, as modified by the Parties' agreement reflected in Exhibit B, offers ample protection against the disclosure of "Confidential" or "Highly Confidential-Attorneys' Eyes Only" information. The Parties have negotiated limitations on who may serve as an expert with access to confidential information. (*See* Pls.' Proposed Stipulated Protective Order at ¶ 2.7). Each of those experts must agree to be bound by the Protective Order's terms before being shown any "Confidential" or "Highly Confidential-Attorneys' Eyes Only" information. (Id. at ¶7.2(c), ¶7.3(c) & Ex. A). There are further safeguards in place to ensure such information is shared with an extremely limited group of counsel, including only two Designated House Counsel. (Id. at ¶7.2 & ¶7.3). Simply put, Plaintiffs have proposed a suitable, practical compromise position that protects confidential information without unduly burdening the Parties' ability to use it and without prejudicing any party.

*Third*, it is worth noting that the confidential information at issue here will consist of responsive, properly produced documents and ESI. In other words, information that is relevant to the Parties' claims and defenses and, more to the point, relevant to forming expert opinions about those claims and defenses. In a complicated case with an aggressive schedule, Google wants to import requirements for expert work that, even in a best-case scenario, would delay a party's ability to give their expert relevant information by weeks. Preventing Plaintiffs from sharing critical information with their experts in a timely manner would significantly restrict Plaintiffs' ability to prosecute this case efficiently. Google offers no meaningful justification for this.

*Fourth*, Google's provision would require Plaintiffs to disclose the identity of their experts *months* before the Rule 26 disclosure deadline. Significantly, because the Consumer and Developer Class Plaintiffs are far less likely to have "Confidential-Attorneys' Eyes Only" information, the practical operation of Paragraph 7.4 is a one-sided exchange in which Google gets a free preview of the Class Plaintiffs' experts, but does not have to reciprocate. Such an outcome is highly prejudicial. Additionally, Paragraph 7.4 would require the Parties to disclose consulting experts, which goes far beyond the requirements of the Federal Rules.[4] Here, context is important. Google is a world-dominating technology company. Google spends tens or hundreds of millions every year funding academics, think tanks and research institutions, as part of its lobbying activities.[5] Many of these experts might be willing to advise Plaintiffs confidentially, but would be unwilling to be disclosed as testifying expert for fear of retribution, including loss of funding. Within this context, it is clear that having to disclose non-retained experts could also harm Plaintiffs' ability to investigate and prosecute their claims.

The Court already admonished the Parties not to try and shield these proceedings from the public eye any more than necessary. The Plaintiffs heeded this warning and submitted a proposed protective order that hews closely to the Standard Protective Order, with only slight modifications which represent concessions to Google intended to avoid the need to burden the Court with unnecessary disputes. Adopting Google's further restrictions is a bridge too far and would only complicate discovery, burden the Parties' ability to efficiently work with experts and potentially bog down the Court in otherwise avoidable discovery disputes. Plaintiffs therefore respectfully request that the Court adopt Exhibit B and omit Paragraph 7.4 from the final Stipulated Protective Order.

---

[4] *See, e.g., In re Pizza Time Theatre Sec. Litig.*, 113 F.R.D. 94, 97–98 (N.D. Cal. 1986) (finding making production of discoverable documents conditioned upon the disclosure of non-testifying experts improper, and noting that "discovery of the identities of non-testifying experts should be subject to the same standard as discovery of their opinions, namely, the 'exceptional circumstances' standard.").

[5] *See, e.g.,* https://www.wsj.com/articles/paying-professors-inside-googles-academic-influence-campaign-1499785286.

| | |
|---|---|
| Dated: October 23, 2020 | CRAVATH, SWAINE & MOORE LLP<br>Christine Varney<br>Katherine B. Forrest<br>Gary A. Bornstein<br>Yonatan Even<br>Lauren A. Moskowitz<br>M. Brent Byars |
| | Respectfully submitted, |
| | By:  /s/  *Yonatan Even*<br>         Yonatan Even |
| | *Counsel for Plaintiff Epic Games, Inc.* |
| Dated: October 23, 2020 | KOREIN TILLERY, LLC<br>George A. Zelcs<br>Robert E. Litan<br>Randall P. Ewing, Jr.<br>Jonathan D. Byrer<br>Stephen M. Tillery<br>Michael E. Klenov<br>Carol L. O'Keefe |
| | BARTLIT BECK LLP<br>Karma M. Giulianelli<br>Glen E. Summers<br>Jameson R. Jones |
| | Respectfully submitted, |
| | By:  /s/  *Jamie L. Boyer*<br>         Jamie L. Boyer |
| | *Counsel for Plaintiffs and the Proposed Class in Carr v. Google LLC et al.* |

| | |
|---|---|
| Dated:  October 23, 2020 | HAGENS BERMAN SOBOL SHAPIRO LLP<br>    Robert F. Lopez<br>    Benjamin J. Siegel |
| | Respectfully submitted, |
| | By:  /s/  *Steve W. Berman*<br>         Steve W. Berman |
| | *Counsel for Plaintiffs and the Proposed Class in Pure Sweat Basketball v. Google LLC et al.* |
| Dated:  October 23, 2020 | MILBERG PHILLIPS GROSSMAN LLP<br>    Peggy J. Wedgworth<br>    Robert A. Wallner<br>    Elizabeth McKenna<br>    Blake Yagman<br>    Michael Acciavatti |
| | Respectfully submitted, |
| | By:  /s/  *Peggy J. Wedgworth*<br>         Peggy J. Wedgworth |
| | *Counsel for Plaintiffs and the Proposed Class in Bentley, et al. v. Google LLC et al.* |
| Dated:  October 23, 2020 | HAUSFELD LLP<br>    Bonny E. Sweeney<br>    Melinda R. Coolidge<br>    Katie R. Beran<br>    Samantha J. Stein<br>    Scott A. Martin<br>    Irving Scher |
| | Respectfully submitted, |
| | By:  /s/  *Bonny E. Sweeney*<br>         Bonny E. Sweeney |
| | *Counsel for Plaintiffs and the Proposed Class in Peekya App Services, Inc. v. Google LLC et. al* |

| | |
|---|---|
| Dated: October 23, 2020 | MORGAN, LEWIS & BOCKIUS LLP<br>Brian C. Rocca<br>Sujal J. Shah<br>Michelle Park Chiu<br>Minna Lo Naranjo<br>Rishi P. Satia |
| | Respectfully submitted, |
| | By:  /s/  *Brian C. Rocca*<br>        Brian C. Rocca |
| | *Counsel for Defendant Google LLC et. al* |

### **E-FILING ATTESTATION**

I, Peggy J. Wedgworth, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

/s/  *Peggy J. Wedgworth*
Peggy J. Wedgworth